## LITTLE'S APPEAL.

A devisee will not be put to an election upon a doubtful construction.

Where the intention is clearly expressed or necessarily implied, the party to whom the benefit is given, but claiming adversely thereto, must elect, or otherwise make compensation.

Appeal from the decree of the Orphans' Court of Philadelphia. No. 62 January Term, 1878.

This is an appeal by Mary and Caroline Little from a decree

3 Wa 15

of the Orphans' Court of Philadelphia, in the estate of Wm. C. Little, deceased.

The facts of the case as found in the adjudication of the Court below, were as follows: William C. Little died December 4th, 1875, having first made and published his last will and testament, bearing date November 8th, 1875, by which he devised and bequeathed *inter alia*, as follows:

"I give, devise and bequeath unto my children, Ferdinand S. Little, Caroline Little, and Mary Little, my store property and lot of ground on the west side of Sixth street (No. 154), below Race street, in the said city; also, the business conducted therein, the tools and personal property connected therewith, and all debts due or owing me from or by said business, and also any and all moneys deposited in bank, to hold to them, their heirs, executors, administrators and assigns, as tenants in common, so that the said Ferdinand S. Little may have and hold one-half part of the said store property and lot of ground, business, tools, personal property and bank deposit, and the said Caroline and Mary Little may have and hold the other half part (each one-fourth part) of the same in fee, with power to sell and convey in fee simple, or mortgage the said real estate, and to sell the said business, or both, or either. If they all so desire, and to sign, seal, execute and deliver to the proper person or persons a good and sufficient deed or deeds or mortgage in law for the same." * * * * * "And I declare my intention to be that the advances I have made during my lifetime, with the bequests and gifts herein made, shall be an equivalent for any seeming inequality of the deposition of my property by this my last will and testament."

His son, Ferdinand S. Little, and Harman Osler, Jr., were named executors.

William C. Little, who was a manufacturer of undertakers' hardware, in the fall of 1873 bought his former partner's interest, a Mr. Weekerly, and conducted the business alone for the remainder of the year. Being then seventy-six years old and feeling the infirmities of age upon him, he could not give the needed attention to the concern. He called upon his son Ferdinand, the accountant, who was then and had been for nine

years previous in the business of manufacturing harness hardware ornaments, and repeatedly urged him to give up his business, bring his stock and tools to his, the father's place, 154 North Sixth street, and become his partner there. The father said to his son and others that his business was falling off by reason of his inability to give it his personal attention, and that, therefore, he had taken in Ferdinand as his partner; that the two could be conducted together with profit. He further expressed a desire that the name of "William C. Little & Company" should live after his death. At the urgent request of the father, Ferdinand left his former shop in Hudson Place, brought his stock, tools, etc., to No. 154 North Sixth street, where, from January 1st, 1874, down to the death of the testator, December 4th, 1875, he had sole charge of the entire business. Ferdinand turned into the new firm all his tools, stock and cash, and without any written articles the business was conducted under the firm name of William C. Little & Company, with the old books and the cash received and paid out for the partnership of the father and son.

Upon the decease of the father letters testamentary were granted to the son alone. The value of the stock, tools, books, debts and merchandise belonging to, and constituting the business which had been theretofore conducted in said store, was appraised at $4,636.92. The executor charged himself, in his inventory and account filed, with but a moiety thereof.

Having found these facts, the Court below decreed "that Ferdinand S. Little was a full partner of decedent, and that in making up his account he properly charged himself with but one-half of the stock, tools and business at No. 154 N. Sixth street," and that "there being no estate not specifically bequeathed with which to pay the debts of the decedent, all the legacies of personal property must abate *pro rata*.

Exceptions were filed on behalf of Mary and Caroline, which were overruled and the adjudication confirmed, whereupon they took this appeal and filed the following assignments of error :

1. The Court erred in not deciding that Ferdinand S. Little was obliged to elect, whether he would take his own property

or the devises and bequests in his favor by the will of testator, and that if he elected to take the latter, he was not entitled to claim his interest in the tools and business, so used in and carried on at No. 154 North Sixth street.

2. The Court erred in not deciding, as Ferdinand S. Little retained for his own use a moiety of the tools and business so used in and carried on at said store, that he was obliged, out of the bequests to him, to compensate the legatees, who were disappointed in receiving the benefits they would otherwise have received under the will.

3. The Court erred in awarding to Ferdinand S. Little, who retained for his own use the moiety of said tools and business, a moiety of the other moiety of the valuation thereof, with which he charged himself.

4. The Court erred in awarding to Ferdinand S. Little any portion of the moiety of said tools and business, with which he charged himself.

---

*John G. Johnson, Esq.,* for appellants, cited : Andrew vs. Trinity Hall, 9 Vesey, 525 ; Penna. Co. vs. Stokes, 61 Pa., 136 ; Shuttleworth vs. Greaves, 4 Mylne & Craig, 34 ; Cox vs. Rogers, 77 Pa., 160 ; Lewis vs. Lewis, 33 Pa., 66 ; Gable vs. Daub, 40 Pa., 230 ; Padbury vs. Clark, 2 Mac & Gor., 298 ; Swan vs. Holmes, 19 Beavan, 471 ; Wintour vs. Clifton, 21 Beavan, 447 ; Wilkinson vs. Dent, L. R., 6 Ch., Ap., 339.

*Charles T. Hirt, Esq., contra,* cited : Rancliffe vs. Parkins, 6 Dow, 185 ; Dummer vs. Pitcher, 2 Mylne & Keene, 262 ; Madison vs. Chapman, 1 Johns & Henning, 470 ; Bidwell's Settlement, XI Weekly Reports, 161 ; Haven vs. Sacket, 15 N. Y., 365 ; Miller vs. Springer, 70 Pa., 269 ; Stoke's Estate, 61 Pa., 140 ; City vs. Davis, 1 Wh., 502 ; Bradford vs. Kents, 43 Pa., 474.

The Supreme Court reversed the decree of the Orphans' Court on January 20, 1879, in the following opinion, per

TRUNKEY, J. :

Lord Eldon said : "Election is where the testator gives what does not belong to him, but does belong to some other person ; and gives that person some of his own, by virtue of which

gift a condition is implied, either that he will part with his own estate or shall not take the bounty." Most abundant authorities have settled the legal principles governing cases of election, among which are the construction upon which a party is put to an election must be clear upon the face of the will; and he will never be put to an election upon a doubtful construction. When clearly expressed or necessarily implied, the party to whom the benefit is given, but claiming a right thereto, must elect, or otherwise make compensation out of what is clearly given to him.

It would be mere supererogation to do more than to ascertain if there is, in William C. Little's will, a clear intention on his part to dispose of that not his own. It is conceded that the testator owned the real estate occupied for the business of the firm, and half of the personal property connected therewith. His son and partner, Ferdinand, owned the other half of the personalty. He devised and bequeathed to his children, Ferdinand, Caroline and Mary, "my store property and lot of ground; also, the business conducted therein, the tools, and personal property connected therewith, and all debts due or owing me from or by said business, and also any and all moneys deposited in bank, to hold to them, their heirs, executors, administrators and assigns, as tenants in common, so that the said Ferdinand S. Little may have and hold one-half part of the said store property and lot of ground, business, tools, personal property and bank deposit, and the said Caroline and Mary Little may have and hold the other half part (each one-fourth part) of the same in fee." After bequests to his other children, and approving his late wife's will, he adds, "I declare my intention to be that the advances I have made during my lifetime, with the bequests and gifts herein made, shall be equivalent for any seeming inequality of the disposition of my property by this my last will and testament." The will is wholly free from ambiguity, and evidences care and thoughtfulness in the testator. Though it was said that it "is an artificially drawn instrument by some one who knew merely the sound of legal phraseology," yet the meaning is evident alike to the acute lawyer and the unskilled layman. Only by dint of legal lore can the former bring himself to

doubt; and even then of the legal effect of the testator's words rather than of his intention    The "very blending of the real and personal estate," and giving one-half thereof to Ferdinand and the other half to Caroline and Mary, is unmistakable. The realty and entire personalty are treated precisely alike. To make sure of his object, beyond danger of defeat by construction, he directs that Ferdinand "may have and hold one-half part of the said store property and lot of ground, business, tools, personal property and bank deposit, and the said Caroline and Mary Little may have and hold the other half (each one-fourth part)." His language is too sharp-cut for interpretation. It presents no difficulty. The real estate, the business conducted therein, and the tools and personal property connected therewith, are what the testator gave. If Ferdinand takes half the land and goods he did not own, he must give half the goods he did own, or otherwise make compensation to Caroline and Mary.

So much of the decree as is inconsistent with the ruling in the foregoing opinion is reversed, at costs of the appellee, and record remitted for further proceedings.